UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOANNE J. ANTROBUS,<br><br>                  Plaintiff,<br><br>       -v.-<br><br>NEW YORK CITY HEALTH AND<br>HOSPITALS CORPORATION,<br><br>               Defendant. | 19 Civ. 7449 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Plaintiff Joanne J. Antrobus worked as a paralegal for Defendant New York City Health and Hospitals Corporation ("HHC") from 2007 until her retirement in 2019. Now proceeding *pro se* and *in forma pauperis*, Plaintiff brings this action alleging violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 to 634 (the "ADEA"), the New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 (the "NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 to 8-131 (the "NYCHRL"). In brief, Plaintiff claims that Defendant (i) discriminated against her on the basis of her age by denying her opportunities to pursue other positions within HHC; (ii) retaliated against her when she complained, internally and externally, about this discrimination; and (iii) created a hostile work environment that forced her to retire. Defendant now moves to dismiss Plaintiff's Third Amended Complaint (or "TAC") on the grounds that Plaintiff's claims are largely time-barred, and to the extent they are not time-barred, the claims are not viable. For the reasons discussed herein, Defendant's motion to dismiss is granted.

**BACKGROUND**[1]

A.   **Factual Background**

1.   **Plaintiff's Initial Employment with HHC and 2011 Promotion**

Plaintiff is 66 years old, and began working for Defendant as a part-time paralegal in 2007.  (TAC ¶¶ 2-4).  Prior to Plaintiff's employment with Defendant, she had acquired several years of similar work experience, including as a paralegal at two private law firms, and as a paralegal aide at the New York City Law Department where she worked on matters related to the Defendant.  (*Id.* at ¶¶ 2-3).

In February 2011, Plaintiff applied for a full-time paralegal position with Defendant.  (TAC ¶ 4).  According to Plaintiff, her then-supervisor, Margaret Sherman, did not support her application for the position, even though Plaintiff had received positive performance reviews.  (*Id.*).  Instead, Plaintiff understood from Sherman's statements that she preferred to hire a younger person for the position and supported the application of a younger woman in the office.  (*Id.*).  Plaintiff was nonetheless hired for the position after appealing to Sherman's superior.  (*Id.*).  After assuming the full-time position, Plaintiff noticed increasing hostility from Sherman.  (*Id.*).  In particular, Plaintiff found Sherman unsupportive, and felt that she was actively denying Plaintiff professional opportunities, though Plaintiff has not

---

[1]    The facts in this Opinion are largely drawn from Plaintiff's Third Amended Complaint ("TAC" (Dkt. #30)), the well-pleaded facts of which are taken as true for the purposes of this motion.  Additional facts come from Plaintiff's briefing, *see infra* Discussion Section n.5, as well as the exhibits appended to Plaintiff's Second Amended Complaint ("SAC" (Dkt. #9)).

For ease of reference, the Court refers to the parties' briefing as follows: Defendant's opening brief is referred to as "Def. Br." (Dkt. #34); Plaintiff's opposition brief as "Pl. Opp." (Dkt. #37); and Defendant's reply brief as "Def. Reply" (Dkt. #38).

alleged any specific instances in which Sherman engaged in such conduct. (*Id.* at ¶ 5).

## 2. Plaintiff's 2013 and 2015 Job Applications and First EEOC Complaint

In or about August 2013, Plaintiff applied for an available paralegal position in Defendant's Settlement Division. (TAC ¶ 6). Had she been hired for the position, Plaintiff would have received both a promotion and a raise. (*Id.*). The position instead was given to a younger person, whom Plaintiff viewed as less qualified. (*Id.*). Plaintiff was told that she had not been hired because the position required "Excel" skills, though Plaintiff believed herself "moderately familiar" with the Microsoft Excel program. (*Id.*). Additionally, Defendant regularly provided computer skills training to employees; however, it did not offer such training to Plaintiff when she applied for a role with the Settlement Division. (*Id.*). Plaintiff understood the reference to "Excel" to be "code" indicating a preference for a younger person. (*Id.*).

In or about November 2015, Plaintiff applied for an opening as a paralegal and claims specialist with Defendant, a position that would have entailed a promotion and a raise. (TAC ¶ 7). However, Plaintiff did not get the position, and was told that the position was given to someone with "computer savvy" — a younger person whom Plaintiff felt had less experience. (*Id.*). Plaintiff considers herself "quite capable on a computer, especially for those tasks customarily required of a paralegal." (*Id.*). Here, too, Plaintiff understood the professed interest in "computer savvy" to indicate a preference for hiring a younger person. (*Id.*).

At some point in 2015, Plaintiff filed a discrimination claim with the U.S. Equal Employment Opportunity Commission (the "EEOC") alleging that Defendant had denied her professional advancement on the basis of her age (the "First EEOC Complaint").  (TAC ¶ 8).[2]  Plaintiff later inquired with the EEOC about the status of her claim, and was told that the case handler assigned to her complaint had closed her case before leaving the EEOC.  (*Id.*).  She also learned that Defendant had been sent a copy of her complaint.  (*Id.*).  After Plaintiff filed the First EEOC Complaint, she noticed a change in her interactions with her managers at work.  (*Id.* at ¶ 10). Specifically, Plaintiff alleges that she began to receive fewer assignments and was denied access to information that she needed to perform her job.  (*Id.*). This behavior continued throughout the remainder of her employment with Defendant.  (*Id.*).

### 3.    Plaintiff's Internal Complaints and Consideration for the 2016 Position

On March 29, 2016, Plaintiff filed an age discrimination complaint (the "EEO Complaint") with Defendant's internal equal employment opportunity office (the "EEO").  (TAC ¶ 9).[3]  Plaintiff received no response, and when she later asked the EEO Officer about the status of her complaint, she was told that the EEO's investigation had determined that her claims were unfounded.  (*Id.*).

Several months later, in or around September 2016, Plaintiff learned about an open paralegal position with Defendant's Intake Unit.  (TAC ¶ 11).

---

[2]     The parties have not provided a copy of the First EEOC Complaint to the Court.

[3]     The parties have not provided a copy of the EEO Complaint to the Court.

Before Plaintiff could apply for the position, however, it was given to a person with less experience. (*Id.*). Plaintiff asked David Cheung, the senior supervisor in charge of the open position, why she had not been given the opportunity to apply, and was told that, among other things, the position would require regular trips to and from another location to pick up legal papers. (*Id.*). Plaintiff alleges that she does not suffer from any disability or frailties that would have prevented her from making this commute. (*Id.*). She understood Cheung to be implying that she was too old for the Intake Unit position. (*Id.*).

Following these disappointments, Plaintiff had a number of conversations with Defendant's senior management in which she expressed concerns that she had been passed over for promotions because of her age. (TAC ¶ 13). Her view was that the positions she had sought were "lateral move[s]," but that she had not been given serious consideration due to her age. (*Id.* at ¶ 12). Plaintiff alleges that her managers expressed annoyance at her complaints (Pl. Opp. 4), and after these discussions, began isolating her and either taking away or depriving her of meaningful work assignments (TAC ¶ 13).

At some point, Plaintiff's caseload decreased significantly, and Plaintiff perceived that she was "consistently assigned more menial work" as compared to her younger colleagues. (Pl. Opp. 4). While Plaintiff was asked to complete the administrative task of closing her colleagues' case files, younger employees were given "choice assignments" and were only required to close their own case files. (*Id.*). Plaintiff felt "deeply uncomfortable" by what she describes as her "pariah status" in the office." (*Id.*).

### 4. Plaintiff's Second EEOC Complaint and Departure from HHC

On February 19, 2019, Plaintiff filed a second complaint with the EEOC, alleging that Defendant had discriminated against her by failing to consider her for positions for which she was qualified, and had retaliated against her by reducing her workload, further denying her promotions, and not upgrading her pay scale (the "Second EEOC Complaint"). (TAC ¶ 14; *see also* SAC 10). The EEOC issued Plaintiff her a right to sue letter on May 23, 2019. (TAC ¶ 14; *see also* SAC 11-12). Plaintiff alleges that, following her Second EEOC Complaint, her supervisors, as well as certain members of the Human Resources Department, began to "harass" Plaintiff about her retirement. (*Id.* at ¶ 15). Although Plaintiff had not expressed any interest in retiring imminently, she received unsolicited offers from Human Resources staff to assist her with the retirement process, and Plaintiff's manager repeatedly asked her about her anticipated retirement timing. (*Id.*). Plaintiff alleges that these interactions made her physically and emotionally ill, causing her to resign from her position on May 31, 2019. (*Id.* at ¶¶ 16-17).

## B. Procedural Background

Plaintiff commenced this action with the filing of her Complaint on August 8, 2019, in which she named Defendant as well as additional individual defendants. (Dkt. #2). She quickly thereafter filed two amended complaints: the first on August 14, 2019, and the second on August 26, 2019. (Dkt. #3, 9). In Plaintiff's SAC, she named HHC as the only Defendant. (Dkt. #9). On December 3, 2019, Defendant filed a letter seeking leave to move to dismiss the case. (Dkt. #22). At a pre-motion

conference held on January 16, 2020, Plaintiff expressed interest in amending the SAC, and was granted leave to do so.  (*See* Dkt. #28 (transcript)).  Plaintiff's Third Amended Complaint, which she prepared with the assistance of the New York Legal Assistance Group ("NYLAG") was filed on March 20, 2020.  (Dkt. #30; *see also id.* at 4 n.1).  Defendant renewed its request for leave to file a motion to dismiss on April 10, 2020 (Dkt. #31), and the Court granted Defendant's application and set a briefing schedule the same day (Dkt. #32).

Defendant filed its motion to dismiss on May 11, 2020.  (Dkt. #33-34).  Plaintiff's opposition brief was filed on July 16, 2020 (Dkt. #37), and briefing on the motion was complete with the filing of Defendant's reply on August 5, 2020 (Dkt. #38).

## DISCUSSION

Plaintiff brings claims of discrimination,[4] retaliation, hostile work environment, and constructive discharge pursuant to the ADEA, the NYSHRL, and the NYCHRL.  Although Plaintiff's pleadings and allegations are not precise, construing her submissions to raise the strongest arguments they suggest, the Court understands Plaintiff to advance the following claims:[5]

---

[4]    Throughout this Opinion, and in keeping with the parties' submissions, the Court uses "discrimination" to refer to Plaintiff's claims of disparate treatment because of her age, as distinguished from Plaintiff's claims of a hostile work environment.

[5]    Plaintiff has asked that the Court consider facts alleged in her opposition brief as if they were properly pleaded in the TAC.  (Pl. Opp. 1).  On a motion to dismiss, district courts will consider new factual allegations in a *pro se* plaintiff's briefing where they are consistent with the complaint.  *See, e.g.*, *Braxton* v. *Nichols*, No. 08 Civ. 08568 (PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010); *Coakley* v. *42nd Pct. Case 458,* No. 08 Civ. 6206 (JSR), 2009 WL 3095529 at *3 (S.D.N.Y. Sept. 28, 2009).  Therefore, the Court will do so here, but will not consider new claims raised for the first time in Plaintiff's opposition brief, particularly because Plaintiff has now had three opportunities to amend her pleadings.  *See Mira* v. *Argus Media*, No. 15 Civ.

i.     Plaintiff alleges discrimination and retaliation beginning in 2011, when her supervisor did not support her application for a full-time position, and became hostile and unsupportive upon Plaintiff's promotion by her senior supervisor. (TAC ¶¶ 4-5).

ii.     Plaintiff alleges discrimination arising from her unsuccessful applications for two different paralegal positions with Defendant in August 2013 and November 2015, which positions were given to younger people. (*Id.* at ¶¶ 6-7).

iii.     Plaintiff alleges retaliation following the filing of her first EEOC Complaint in 2015, and her EEO Complaint in March 2016, when she began to receive fewer assignments and was denied access to information. (*Id.* at ¶¶ 8-10)

iv.     Plaintiff alleges discrimination by Defendant in September 2016, when she was not given an opportunity to apply for an open paralegal position, and was told by the senior supervisor in charge of the position that it would require trips to and from another location to pick up legal papers. (*Id.* at ¶ 11).

v.     Plaintiff alleges retaliation following informal conversations with senior management in which she expressed concerns that she had been passed over for promotions because of her age. (*Id.* at ¶ 13). After these conversations, Plaintiff's managers began isolating her and either taking away or depriving her of meaningful work assignments, and Plaintiff was left with work that was more menial than that given to her younger colleagues. (*See id.*; *see also* Pl. Opp. 4).

---

9990 (RJS), 2017 WL 1184302, at *3 (S.D.N.Y. Mar. 29, 2017); *Pandozy* v. *Segan*, 518 F. Supp. 2d 550, 554 n.1 (S.D.N.Y. 2007), *aff'd*, 340 F. App'x 723 (2d Cir. 2009) (summary order).

Moreover, prior to Plaintiff's third amendment of her complaint, the Court discussed with Plaintiff the distinctions between and among her discrimination, retaliation, and hostile work environment claims, and advised that Plaintiff amend her pleadings to distinguish among these claims. (*See* Dkt. #28 at 30:3-35:24, 49:4-10 (transcript)). The Court's understanding of Plaintiff's claims thus stems from her subsequently-filed TAC, prepared with the assistance of NYLAG, and the Court will not interpret Plaintiff's opposition briefing to further revise her theories of discrimination, retaliation, and hostile work environment.

vi.   Plaintiff alleges retaliation, constructive discharge, and a hostile work environment arising from Defendant's conduct following the filing of her Second EEOC Complaint on February 19, 2019.  (TAC ¶¶ 14-15).  Plaintiff alleges that she was subjected to harassment about her retirement, which made her physically and emotionally ill, and caused her to resign from her position on May 31, 2019.  (*Id.* at ¶¶ 16-17).

Defendant's motion to dismiss asserts that Plaintiff's claims are largely untimely, and that any timely claims fail to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6).  For the reasons discussed below, the Court grants Defendant's motion.

## A.   Applicable Law

### 1.   Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Defendant seeks dismissal of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  A complaint that contains only "naked assertions" or "a formulaic recitation of the elements of a cause of action" does not suffice. *Twombly*, 550 U.S. at 555.

In making Rule 12(b)(6) determinations, courts "may consider any written instrument attached to the complaint, statements or documents

incorporated into the complaint by reference ... and documents possessed by or known to the plaintiff and upon which [he] relied in bringing the suit." *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 558-60 (2d Cir. 2016) (discussing documents that may properly be considered in resolving a motion to dismiss).  The Court accepts as true all well-pleaded factual allegations in the complaint.  *See Iqbal*, 556 U.S. at 678.

### 2.    Discrimination and Retaliation Claims Under the ADEA

"With respect to an individual over the age of 40, the ADEA makes it unlawful for an employer to 'discriminate against the individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's age.'"  *Davis-Garett* v. *Urban Outfitters, Inc.*, 921 F.3d 30, 41 (2d Cir. 2019) (quoting 29 U.S.C. §§ 623(a)(1), 631(a)) (internal quotation marks and brackets omitted)).  This prohibition "encompass[es] 'requiring people to work in a discriminatorily hostile or abusive environment.'"  *Id.* (quoting *Harris* v. *Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  The ADEA further provides that "[i]t shall be unlawful for an employer to discriminate against any of his employees ... because such individual ... has opposed any practice made unlawful by this section, or because such individual ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter."  29 U.S.C. § 623(d).

Age discrimination and retaliation claims under the ADEA require consideration of the familiar burden-shifting framework set forth in

*McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802-04 (1973). *See Littlejohn* v. *City of New York,* 795 F.3d 297, 307-08 (2d Cir. 2015) (citing *Reeves* v. *Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)); *see also Alexander* v. *N.Y.C. Dep't of Educ.*, No. 19 Civ. 7023 (AJN), 2020 WL 7027509, at *3, 9 (S.D.N.Y. Nov. 30, 2020) (discussing burden-shifting under the ADEA). Discrimination and retaliation complaints are subject to a "lowered standard of review" at the motion to dismiss stage. *Ingrassia* v. *Health & Hosp. Corp.*, 130 F. Supp. 3d 709, 719 (E.D.N.Y. 2015). A plaintiff is not obligated "to plead a *prima facie* case of discrimination as contemplated by the *McDonnell Douglas* framework." *Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). However, she must still provide "a short and plain statement of the claim that shows that [she is] entitled to relief and that gives the defendants fair notice of [her] claims of age discrimination and the grounds upon which those claims rest." *Kassner* v. *2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 238 (2d Cir. 2007).

### 3. The Court's Review of *Pro Se* Submissions

Generally speaking, courts are directed to "afford … a special solicitude" to *pro se* litigants, and, in this regard, to construe their pleadings and motion papers liberally. *Tracy* v. *Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Under this directive, the Court is to read Plaintiff's "submissions to raise the strongest arguments they suggest." *McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin* v. *United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks omitted)). Arguably, such an obligation would "'appl[y] with particular force'" in this case, "because [Plaintiff] alleges that [Defendant] violated her 'civil rights.'"

11

*Crawley* v. *Macy's Retail Holdings, Inc.*, No. 15 Civ. 2228 (KPF), 2016 WL 6993777, at *4 (S.D.N.Y. Nov. 29, 2016) (quoting *Jackson* v. *N.Y. State Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010)).

The Court notes that Plaintiff secured the services of NYLAG in preparing her TAC.  In two prior opinions, the Court has declined to afford special solicitude to *pro se* plaintiffs whose submissions were prepared with NYLAG's assistance.  *See Littlejohn* v. *Consol. Edison Co. of N.Y., Inc.*, No. 18 Civ. 6336 (KPF), 2019 WL 3219454, at *1 n.1 (S.D.N.Y. July 17, 2019); *Price* v. *City of New York*, No. 15 Civ. 5871 (KPF), 2018 WL 3117507, at *5 n.5 (S.D.N.Y. June 25, 2018).  However, the Court acknowledges that an argument can be made that "[i]f pro se litigants who receive limited assistance from NYLAG lose all protections afforded to them, NYLAG faces a catch-22: providing less than full representation will harm litigants by eliminating the special care otherwise afforded."  *Campa* v. *Entergy Nuclear Operations, Inc.*, No. 17 Civ. 792 (KMK), 2019 WL 4221560, at *8 (S.D.N.Y. Sept. 5, 2019) (quoting from plaintiff's sur-reply submission).  Like the court in *Campa*, this Court does not need to resolve that conflict in this Opinion, because Plaintiff's claims fail even when read with special solicitude.

## B.    Analysis

### 1.    Certain of Plaintiff's ADEA Claims Are Time-Barred

A plaintiff who wishes to commence an action alleging violations of the ADEA must first file an EEOC discrimination charge within 300 days of the date of the alleged unlawful practice.  *See Tewksbury* v. *Ottoway Newspapers*, 192 F.3d 322, 328-29 (2d Cir. 1999); *Harris* v. *City of New York,* 186 F.3d 243, 247-48 (2d Cir. 1999).  Any claim not filed within this

timeframe is barred as untimely.  *See Staten* v. *City of New York*, No. 14 Civ.
4307 (ER), 2015 WL 4461688, at *8 (S.D.N.Y. July 20, 2015) (quoting *Nat'l
R.R. Passenger Corp.* v. *Morgan*, 536 U.S. 101, 109 (2002)).

Plaintiff filed her Second EEOC Complaint, which in turn led to the
issuance of her right to sue letter, on February 19, 2019.  (TAC ¶ 14).
Therefore, any claims that accrued before April 25, 2018 — 300 days before
February 19, 2019 — should be time-barred.  The bar encompasses
Plaintiff's allegations regarding Defendant's failure either to support her
applications or to consider her for various positions (*see id.* at ¶¶ 4, 6-7, 11),
as well as Plaintiff's claims of retaliation immediately following her 2015 and
2016 EEOC and EEO Complaints (*see id.* at ¶¶ 8-10).

Plaintiff argues that her claims are timely pursuant to the "continuing
violation" doctrine.  (Pl. Opp. 1-3).  "The 'continuing violation doctrine' is an
'exception to the normal knew-or-should-have-known accrual date' if there
is 'evidence of an ongoing discriminatory policy or practice.'"  *Corona Realty
Holding, LLC* v. *Town of N. Hempstead*, 382 F. App'x 70, 72 (2d Cir. 2010)
(summary order) (quoting *Harris*, 186 F.3d at 248); *accord Lucente* v. *Cty. of
Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020).  "[A] continuing violation may be
found where there is proof of specific ongoing discriminatory policies or
practices, or where specific and related instances of discrimination are
permitted by the employer to continue unremedied for so long as to amount
to a discriminatory policy or practice."  *Cornwell* v. *Robinson*, 23 F.3d 694,
704 (2d Cir. 1994).  Where such a continuing violation is shown, "the
plaintiff is entitled to bring suit challenging all conduct that was a part of

13

that violation, even conduct that occurred outside the limitations period." *Id.*

The Second Circuit has "cautioned ... that while this theory may apply to 'cases involving specific discriminatory policies or mechanisms, ... multiple incidents of discrimination, *even similar ones,* that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation.'" *Hongyan Lu* v. *Chase Inv. Serv. Corp.*, 412 F. App'x 413, 416 (2d Cir. 2011) (summary order) (emphasis in *Hongyan Lu*) (citing *Lambert* v. *Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993)). Such "[d]iscrete incidents of discrimination that are not part of a discriminatory policy or practice ... cannot be continuing violations." *Corona Realty Holding*, 382 F. App'x at 72; *see also Lucente*, 980 F.3d at 309 ("The continuing violation doctrine thus applies not to discrete unlawful acts, even where those discrete acts are part of 'serial violations,' but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." (quoting *Morgan*, 536 U.S. at 114-15)). In other words, the continuing violation doctrine does not apply to "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire[, which] are easy to identify." *Morgan*, 536 U.S. at 114.[6] Thus, Plaintiff's constructive discharge claim, alleged for the first time in her opposition brief (*see* Pl. Opp. 2), may not be used to bring in otherwise time-barred conduct under the continuing violation doctrine; though the claim is itself timely,

---

[6]     Though Plaintiff's claims that she was either not supported, not considered, or not promoted for certain positions are entirely time-barred, as they accrued well before April 25, 2018 (*see* TAC ¶¶ 4, 6-7, 11), the Court observes that even were any of these claims timely, the continuing violation doctrine would not apply.

constructive discharge is a discrete act that does not render the alleged conduct that came before it timely. *See Francois* v. *N.Y.C. Dep't of Educ.*, No. 19 Civ. 11119 (ER), 2021 WL 603226, at *5 (S.D.N.Y. Feb. 16, 2021) ("Completed acts that occur a single time, like termination through discharge or resignation, are precise examples of activities that do not involve the sort of ongoing policy or mechanism that the continuing violation doctrine demands.").[7]

The continuing doctrine also does not permit the Court to consider Plaintiff's untimely retaliation claims. *See, e.g.*, *Valtchev* v. *City of New York*, 400 F. App'x 586, 589 (2d Cir. 2010) (summary order) (observing that "discrete instances of retaliatory action" do not "trigger" the continuing violation doctrine). Such claims include Plaintiff's allegations that: (i) in 2011, her supervisor failed to support her and actively denied her professional opportunities (TAC ¶ 5); and (ii) after she filed her First EEOC Complaint and her EEO Complaint in 2015 and 2016, respectively, and expressed concerns to senior management that she was denied promotions because of her age, Defendant retaliated against her by isolating her, excluding her from work assignments and refusing to share information that she needed to do her job (*id.* at ¶¶ 8-10 13). As pleaded, such conduct is

---

[7]    While the phrase "constructive discharge" was not employed in the TAC, the allegations that Plaintiff was harassed following the filing of her Second EEOC Complaint, and that this harassment made her physically and emotionally ill to the point where she resigned, are sufficient to "encompass" a theory of constructive discharge. (TAC ¶¶ 15-17). *See Fitzgerald* v. *Henderson*, 251 F.3d 345, 367 (2d Cir. 2001) (finding that plaintiff's allegations were "ample to encompass a theory of constructive discharge" even where plaintiff did not expressly reference the phrase "constructive discharge" in her complaint). The Court thus will consider Plaintiff's contructive discharge claim, and will not dismiss this claim merely on the theory that it is outside the scope of Plaintiff's pleadings. *See id.*

more akin to "'a series of discrete individual wrongs rather than a single and indivisible course of wrongful action.'" *Francois*, 2021 WL 603226, at \*5 (quoting *Davidson* v. *LaGrange Fire Dist.*, No. 08 Civ. 3036 (VB), 2012 WL 2866248, at \*10 (S.D.N.Y. June 19, 2012)).  For this reason, courts in this Circuit have found allegations of "unfavorable job assignments" to be discrete acts rather than continuous violations.  *See, e.g.*, *Gaston* v. *N.Y.C. Med. Exam'r*, 432 F. Supp. 2d 321, 328 (S.D.N.Y. 2006); *see also Kassner*, 496 F.3d at 239 ("As we have stated previously, a completed act such as a discontinuance of a particular job assignment is not of a continuing nature."). And such discrete acts "cannot be brought within [the limitations period], even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." *Chin* v. *Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 157 (2d Cir. 2012).  Plaintiff's allegations of retaliation pre-dating April 25, 2018, are accordingly time-barred.

Separate from her claims of disparate treatment, Plaintiff alleges that she was subjected to a hostile work environment by Defendant (TAC ¶ 16), and argues from this fact that the "entire time period of the hostile environment may be considered … for the purposes of determining liability" (Pl. Opp. 2-3 (citing *Morgan*, 536 U.S. at 117)).[8]  But a plaintiff may not

---

[8]    In support of the Court's application of the continuing violation doctrine to her hostile work environment claim, Plaintiff argues that she has alleged a "continuous pattern" of discriminatory behavior.  (Pl. Opp. 2).  In *National Railroad Passenger Corporation* v. *Morgan*, 536 U.S. 101 (2002), the Supreme Court expressly refrained from ruling on whether the continuing violation exception could be applied to "pattern-or-practice" claims, 536 U.S. at 115 n.9, leaving open the question of whether the doctrine applies to such claims.  *See Gaston* v. *N.Y.C. Med. Exam'r*, 432 F. Supp. 2d 321, 328, n.1 (S.D.N.Y. 2006); *see also E.E.O.C.* v. *Bloomberg L.P.*, 751 F. Supp. 2d 628, 647-48 (S.D.N.Y. 2010).  "Pattern-or-practice" claims involve multiple incidents of discrimination against individuals in a particular protected class arising from a discriminatory policy or mechanism.  *See Gaston*, 432 F. Supp. 2d at 328, n.1.  Plaintiff has not alleged such a claim here.  As in other cases where

"circumvent the limitations period by merely recasting [her] unexhausted discrete claims ... as a hostile work environment claim." *Iazzetti* v. *Town of Tuxedo*, No. 18 Civ. 6200 (NSR), 2020 WL 4340872, at *6 (S.D.N.Y. July 27, 2020).  At the outset, the Court observes that, as discussed further below, even Plaintiff's timely allegations are insufficient to state a plausible hostile work environment claim.  And "[t]o bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period." *Patterson* v. *Cty. of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004); *accord Davis-Garett*, 921 F.3d at 42 ("A charge alleging a hostile work environment claim ... will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice *and at least one act falls within the time period*." (alterations and emphasis in *Davis-Garett*) (quoting *Morgan*, 536 U.S. at 122)).

But there is a deeper problem with Plaintiff's pleadings:  Stripped of its conclusory assertions, the TAC does not allege any acts of discrimination that are not time-barred.  Indeed, Plaintiff's most recent non-conclusory allegation of discrimination — that Defendant failed to consider her for an open position in September 2016 — is roughly 18 months outside the limitations period.  (*See* TAC ¶ 11).  However, Plaintiff has put forth timely allegations of retaliation, which include:

---

courts have rejected similar attempts to frame allegations as a pattern or practice, Plaintiff "seeks to link together a series of decisions under [this] label," but "that does not change the fact that each decision constituting the pattern or practice is discrete." *Bloomberg L.P.*, 751 F. Supp. 2d at 647-48 (quoting *E.E.O.C.* v. *Freeman*, No. 09 Civ. 2573 (RWT), 2010 WL 1728847, at *6 (S.D.N.Y. Apr. 27, 2010) (internal quotations marks and alterations omitted)).

    i.       Following Plaintiff's First EEOC Complaint in 2015 and her EEO Complaint in 2016, her "interactions with various HHC managers" "chang[ed]," such that she began to receive fewer assignments and was denied access to information that she needed to do her job, which retaliatory acts continued throughout her entire period of employment.  (*Id.* at ¶¶ 8-10).

    ii.     Following Plaintiff's Second EEOC Complaint in February 2019, Plaintiff's supervisors and certain Human Resources staff began to "harass" her about her retirement.  (*Id.* at ¶ 15).[9]

In order to establish that the continuing violation doctrine applies, and that "the time-barred evidence regarding non-discrete acts ... [is] admissible to prove a hostile work environment claim," Plaintiff must plead that her time-barred allegations "constitute[] non-discrete acts that are sufficiently related to the acts that occurred within the limitations period."  *Sooroojballie* v. *Port Auth. of N.Y. & N.J.*, 816 F. App'x 536, 542 (2d Cir. 2020) (summary order).  With the one exception outlined below, the Court concludes that she has not.

    Plaintiff fails to plead that the majority of her otherwise time-barred claims are "sufficiently related" to her timely retaliation claims.  *First*, the Court observes that the retaliatory conduct alleged by Plaintiff was precipitated by a series of complaints that began at some point in 2015.  (*See* TAC ¶ 10).  Accordingly, any pre-2015 conduct is not "part of the same

---

[9]    Plaintiff also alleges that after her discussions with senior management regarding her view that she had been denied "professional advancement" because of her age, her managers began to isolate her and deprive her of meaningful work assignments. (TAC ¶ 13; *see also* Pl. Opp. 4).  However, Plaintiff does not provide the time frames in which either those conversations or the ensuing retaliation occurred, and the Court is thus unable to determine whether these allegations are timely.

unlawful employment practice" as the alleged retaliation that followed Plaintiff's complaints beginning in 2015.  *See Morgan*, 536 U.S. at 122.

*Second*, as to Plaintiff's allegations that Defendant failed to promote her or consider her for open positions (*see* TAC ¶¶ 7, 11), Plaintiff has not alleged any overlap, let alone any connection, between the decisionmakers who failed to consider her for those positions, and the individuals involved in her later experiences of retaliation.  Plaintiff's failure to promote allegations thus remain "discrete" claims, as Plaintiff has not alleged the requisite connection to her claims of retaliation.  *See Mohamed* v. *N.Y. Univ.*, No. 14 Civ. 8373 (GBD) (MHD), 2015 WL 5307391, at *3-4 (S.D.N.Y. Sept. 10, 2015) (declining to apply continuing violation doctrine to failure-to-promote allegation, where complaint did "not provide an adequate basis to determine whether the promotion decision [was] connected to Plaintiff's timely allegations"); *cf. Szuszkiewicz* v. *JPMorgan Chase Bank*, 12 F. Supp. 3d 330, 338-39 (E.D.N.Y. 2014) ("Discrete incidents of discrimination that are unrelated to the hostile work environment, such as … failure to promote, denial of transfer, or refusal to hire … cannot supply the hook to bring an otherwise untimely hostile work environment claim into the 300 day time period." (internal quotation marks and citation omitted)).

*Third*, turning to Plaintiff's allegations of retaliation beginning in 2015, the Court finds that such allegations are not time-barred.  Reading Plaintiff's TAC generously, the Court understands Plaintiff to allege that Defendant began retaliating against her following her First EEOC Complaint in 2015; that this conduct created a hostile work environment; and that it continued until her constructive discharge in 2019.  (TAC ¶¶ 10, 13, 15-16).  District

courts in this Circuit have found that "allegations of discriminatory conduct including language akin to 'throughout her employment' are properly included in hostile work environment claims."  *See Langford* v. *Int'l Union of Operating Eng'rs, Local 30*, 765 F. Supp. 2d 486, 498 (S.D.N.Y. 2011) (collecting cases).  Further, courts in this Circuit have recognized a hostile work environment "as a cognizable retaliatory act."  *Volpe* v. *N.Y.C. Dep't of Educ.*, 195 F. Supp. 3d 582, 595 (S.D.N.Y. 2016) (citing *Sclafani* v. *PC Richard & Son*, 668 F. Supp. 2d 423, 438-39 (E.D.N.Y. 2009)).  Because Plaintiff has alleged continuing acts of retaliation that occurred within the 300-day period, her claim of a retaliatory hostile work environment is not time-barred.  *See Alvarado* v. *Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 779-80 (S.D.N.Y. 2019); *Harewood* v. *N.Y.C. Dep't of Educ.*, No. 18 Civ. 5487 (KPF) (KHP), 2019 WL 3042486, at *4 (S.D.N.Y. May 8, 2019).

In sum, when assessing Plaintiff's ADEA claims, the Court will consider as timely Plaintiff's allegations of conduct on or post-dating April 25, 2018.  Additionally, the Court will consider retaliatory conduct beginning in 2015, but only for the purposes of evaluating Plaintiff's hostile work environment claim.  *See Alvarado*, 404 F. Supp. 3d at 780 n.8.[10]  More

---

[10]   The Court recognizes that Plaintiff has not pleaded the timing of her conversations with senior management in which she raised concerns that she had been denied advancement opportunities, nor has she pleaded specific instances of retaliation following those conversations.  (*See* TAC ¶ 13).  Given the policy in the Second Circuit of "liberally construing *pro se* submissions," *see Triestman* v. *Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006), the Court will infer from the narrative of the TAC that such conversations followed the First EEOC Complaint, and indeed may have been prompted by the alleged failure to consider Plaintiff for an open position in September 2016.  (*See id.* at ¶¶ 11-13).  Construing the TAC to raise the strongest arguments it suggests, the Court will thus consider Plaintiff's allegations of retaliation following her conversations with senior management as timely for the purposes of assessing the plausibility of her hostile work environment claim.

broadly, the Court will consider Plaintiff's other allegations of discrimination and retaliation, even if untimely, where relevant to assessing a timely claim. *See Davis-Garett*, 921 F.3d at 42 ("[E]ven with respect to a claim of discrete discriminatory or retaliatory acts, expiration of the limitations period does not bar an employee from using the prior acts as background evidence in support of a timely claim.").

### 2. Plaintiff's Timely ADEA Claims Are Dismissed for Failure to State a Claim

Having determined which of Plaintiff's claims it may consider as timely, the Court proceeds to address the merits of those claims, which include allegations of discrimination, retaliation, hostile work environment, and constructive discharge under the ADEA.  As detailed herein, the Court ultimately finds that the TAC fails to state an ADEA claim for which relief can be granted.

### a. The Court Dismisses Plaintiff's ADEA Discrimination Claim

To begin, Plaintiff alleges that Defendant discriminated against her based on her age in violation of the ADEA.  A *prima facie* claim of discrimination in the form of disparate treatment under the ADEA is established when a plaintiff "demonstrate[s] membership in a protected class, qualification for their position, an adverse employment action, and circumstances that support an inference of age discrimination."  *Boonmalert* v. *City of New York*, 721 F. App'x 29, 32 (2d Cir. 2018) (summary order) (quoting *Kassner*, 496 F.3d at 238 (internal quotation marks omitted)).  An adverse employment action is "a materially adverse change in the terms and conditions of employment," *Kessler* v. *Westchester Cty. Dep't of Soc. Servs.*,

21

461 F.3d 199, 207 (2d Cir. 2006) (quoting *Williams* v. *R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004)), which "must be more disruptive than a mere inconvenience or an alteration of job responsibilities[,]" *id.* (internal quotation marks omitted) (quoting *Galabya* v. *N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)).

At the motion to dismiss stage, a plaintiff need only plausibly allege: "[i] that adverse action was taken against her by her employer, and [ii] that her age was the but-for cause of the adverse action." *Downey* v. *Adloox Inc.*, 238 F. Supp. 3d 514, 519 (S.D.N.Y. 2017) (internal quotation marks omitted) (quoting *Marcus* v. *Leviton Mfg. Co.*, 661 F. App'x 29, 31-32 (2d Cir. 2016) (summary order)); *accord Smith* v. *Bronx Cmty. Coll. Ass'n*, No. 16 Civ. 3779 (JMF), 2017 WL 727546, at *1 (S.D.N.Y. Feb. 23, 2017). What is more, at the motion to dismiss stage, a plaintiff "need not give plausible support to the ultimate question of whether the adverse employment action" of which she complains "was attributable to discrimination." *Littlejohn*, 795 F.3d at 311. Instead, to pass muster under Rule 12(b)(6), a "plaintiff must plead facts that give 'plausible support to a minimal inference' of the requisite discriminatory causality." *Leviton Mfg. Co.*, 661 F. App'x at 32 (quoting *Littlejohn*, 795 F.3d at 310-11). And this burden requires a plaintiff to "supply sufficient factual material, and not just legal conclusions, t[hat] push the misconduct alleged in the pleading beyond the realm of the 'conceivable' to the 'plausible.'" *Id.* (citing *Vega*, 801 F.3d at 84).

Defendant argues that Plaintiff's discrimination claims must be dismissed for failure to allege any timely adverse action as required at the motion to dismiss stage. (Def. Br. 13). In response, Plaintiff argues that she

has alleged a number of adverse actions, including that she was passed over for professional advancement opportunities in favor of younger and less qualified colleagues, given less meaningful assignments, and pressured to retire before she was ready. (Pl. Opp. 3-4). The Court agrees with Defendant that Plaintiff has not alleged a timely discrimination claim under the ADEA.

*First,* as explained above, Plaintiff's allegations that she was not considered for certain open positions are time-barred, as they predate April 25, 2018. *Second,* as to Plaintiff's allegations that there were changes to her caseload and assignments, and inquiries made about her retirement (*see* TAC ¶¶ 8-9, 13, 15), the Court concludes that these allegations are more properly considered in connection with Plaintiff's retaliation and hostile work environment claims. This conclusion stems from the Court's reading of the TAC, which does not allege that Plaintiff's assignment changes and retirement inquiries were made with any discriminatory intent, but rather alleges that they were made in retaliation for Plaintiff's complaints to the EEOC, the EEO, and senior management. (*See id.*). *See Jagmohan* v. *Long Island R.R. Co.*, No. 12 Civ. 3146 (JFB) (SIL), 2014 WL 4417745, at *10 (E.D.N.Y. Sept. 8, 2014) ("Plaintiff's focus on retaliation for protected activity is not probative of whether defendants acted with *discriminatory* intent." (emphasis in original)), *aff'd*, 622 F. App'x 61 (2d Cir. 2015) (summary order); *Bonfiglio* v. *N.Y. Presbyterian Hosp. Weill Cornell Med. Ctr.*, No. 10 Civ. 4939 (SAS), 2011 WL 2436706, at *3 (S.D.N.Y. June 16, 2011) (observing that "a retaliation claim is 'separate and distinct' [from a discrimination claim] because it alleges adverse actions taken by

employers in response to a plaintiff's 'statutorily protected activity' such as filing a claim of discrimination" (citations omitted)).[11]  The Court will thus consider Plaintiff's timely allegations of changes in her assignments and inquiries about her retirement when it turns to Plaintiff's retaliation and hostile work environment claims, rather than as putative adverse employment actions for an ADEA discrimination claim.[12]  As Plaintiff has failed to allege any timely adverse action, as required at this stage, her ADEA discrimination claim is accordingly dismissed.

### b.   The Court Dismisses Plaintiff's ADEA Hostile Work Environment Claim

Plaintiff next brings a hostile work environment claim under the ADEA.  In support, Plaintiff alleges that, following the filing of her Second EEOC Complaint, she was subjected to a hostile work environment by

---

[11]   As mentioned previously, the Court will accept allegations pleaded in Plaintiff's opposition briefing to the extent consistent with the TAC.  *See Braxton*, 2010 WL 1010001, at *1; *Coakley*, 2009 WL 3095529 at *3.

[12]   Moreover, even had Plaintiff properly alleged that Defendant's changes in her assignments and inquiries about her retirement were made either in part or entirely with discriminatory intent, such allegations would be insufficient to establish an adverse employment action for the purposes of an ADEA discrimination claim. Plaintiff's reduction in meaningful assignments, as alleged, is not an adverse employment action, as Plaintiff has not alleged that this "change in duties … result[ed] in a change in responsibilities so significant as to constitute a setback to [her] career." *Bowen-Hooks* v. *City of New York*, 13 F. Supp. 3d 179, 213 (E.D.N.Y. 2014); *see also Dietrich* v. *City of New York*, No. 18 Civ. 7544 (CM), 2019 WL 2236585, at *7 (S.D.N.Y. May 16, 2019); *Rodriguez* v. *Coca Cola Refreshments USA*, Inc., No. 12 Civ. 234 (BMC), 2013 WL 5230037, at *3 (E.D.N.Y. Sept. 16, 2013) ("[A]ssignments that are part of an employee's normal responsibilities are not adverse employment actions where … the rate of pay and benefits remains the same." (internal quotation marks omitted)).  And as alleged, unsolicited inquiries about Plaintiff's retirement are similarly insufficient to establish an adverse employment action.  *See Boonmalert* v. *City of New York*, 721 F. App'x 29, 32 (2d Cir. 2018) (summary order) (finding that "discussions about retirement, which are a normal part of workplace dialogue between a supervisor and subordinate" do not constitute an adverse employment action); *Hamilton* v. *Mount Sinai Hosp.*, 528 F. Supp. 2d 431, 447 (S.D.N.Y. 2007) (noting that "discussion of retirement is common in offices, even between supervisors and employees, and is typically unrelated to age discrimination"), *aff'd*, 331 F. App'x 874 (2d Cir. 2009) (summary order).

Defendant, which included harassment about the timing of her retirement. (TAC ¶¶ 15-16). Reading the TAC generously, the Court understands Plaintiff to allege that this conduct was in retaliation for Plaintiff's repeated internal and external complaints about Defendant's discriminatory hiring decisions that had denied her opportunities for professional advancement. (*Id.* at ¶ 16). In Plaintiff's opposition brief, she alleges that this hostile work environment encompassed a broader five-to-six-year period that preceded her retirement in May 2019. (Pl. Opp. 2). As explained above, pursuant to the continuing violation doctrine, the Court will consider any retaliatory conduct beginning in 2015 when determining the plausibility of Plaintiff's hostile work environment claim, as well as Plaintiff's allegations of conduct on or after April 25, 2018.

To plead a hostile work environment claim under the ADEA, a plaintiff must demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." *Kassner,* 496 F.3d at 240 (internal quotation marks and citation omitted). This standard has both objective and subjective components: "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Lebowitz* v. *N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 158, 181 (E.D.N.Y. 2017) (quoting *Littlejohn*, 795 F.3d at 121 (internal quotation marks omitted)). At the pleading stage, "a plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment of such quality or quantity that a reasonable employee would find the

25

conditions of her employment altered for the worse." *Patane* v. *Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks, alterations, and citation omitted).  To determine whether an incident or series of incidents is "sufficiently severe or pervasive to alter the conditions" of a plaintiff's work environment, a district court "must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Boonmalert*, 721 F. App'x at 33 (quoting *Littlejohn*, 795 F.3d at 320-21 (internal quotation marks omitted)).

Defendant argues that Plaintiff has failed to state an ADEA hostile work environment claim because (i) she does not plausibly allege that adverse conduct occurred because of her age, and (ii) she fails to allege facts suggesting "severe and pervasive conduct." (Def. Br. 17-18).  Plaintiff does not directly respond to Defendant's arguments that her hostile work environment claim should be dismissed on the merits, but in her arguments as to the timeliness of this claim, she asserts that she has alleged "a continuous pattern of discriminatory behavior related to her age, which occurred regularly and episodically[.]" (Pl. Opp. 2-3).

As previously discussed, much of the conduct Plaintiff alleges in support of her hostile work environment claim is time-barred.  The timely allegations the Court considers pertain to: (i) retaliatory conduct that followed Plaintiff's First EEOC Complaint in 2015, her EEO complaint in 2016, and her other informal complaints to senior management, specifically that Plaintiff received fewer assignments, was isolated, and was denied

26

access to information that she needed to perform her job (TAC ¶¶ 10, 13); and (ii) harassment regarding the timing of Plaintiff's retirement that followed her Second EEOC Complaint (*id.* at ¶ 15). These allegations are insufficient to support a hostile work environment claim.

*First*, Plaintiff alleges that following her First EEOC Complaint and her internal complaints, she received "fewer assignments," that assignments were "taken away" from her, that she was "denied" access to information she needed to do her job, and that she was isolated by her senior managers. (TAC ¶¶ 10, 13). In her opposition brief, she expands on these allegations, claiming that her caseload "decreased significantly to the point where she had little to do, while other younger colleagues were given choice assignments and kept occupied." (Pl. Opp. 4). Even assuming that these actions were taken with a retaliatory motive, they are insufficient to establish "the kind of severity and pervasiveness that can amount to an actionable hostile work environment claim." *Alexander*, 2020 WL 7027509, at *8. Courts have found that similar allegations fall short of altering the conditions of employment. *See, e.g.*, *id.* (holding that allegations that included (i) plaintiff had been removed from a leadership program while another teacher was allowed to remain in it, (ii) plaintiff's duties and responsibilities were reassigned, and (iii) plaintiff was given an excessive workload compared to other teachers, were insufficient to support hostile work environment claim); *Lenart* v. *Coach, Inc.*, 131 F. Supp. 3d 61, 67 (S.D.N.Y. 2015) (finding that allegations regarding other employees' favorable treatment could not sustain a plausible hostile work environment claim); *see also Fleming* v. *MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d

Cir. 2010) (summary order) (determining that no hostile work environment existed where "defendants wrongly excluded [plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her"). Assessing Plaintiff's allegations cumulatively, the Court finds that she has not pleaded the sort of work conditions that could plausibly be deemed "sufficiently pervasive to alter the conditions of [her] employment." *Kassner,* 496 F.3d at 240 (citation and internal quotation marks omitted).

Plaintiff's allegations of retaliation following her First EEOC Complaint and internal complaints suffer from an additional flaw, which is that she has failed to allege that Defendant's conduct was "sufficiently continuous and concerted" such that it could be found "pervasive." *Alfano* v. *Costello,* 294 F.3d 365, 380 (2d Cir. 2002) (citation and internal quotation marks omitted). While Plaintiff references retaliatory conduct in general terms, she does not identify or describe any specific instances of such conduct, or provide the Court with any indication as to its frequency. Without such allegations, the Court is unable to determine that Defendant's conduct, taken together, adds enough to the "totality of the circumstances" to create a hostile work environment. *See Moore* v. *Verizon*, No. 13 Civ. 6467 (RJS), 2016 WL 825001, at *13 n.9 (S.D.N.Y. Feb. 5, 2016) (finding that a statement that a supervisor was negative towards older workers and aimed suspension and disciplinary actions toward such workers, without any specific allegations of such conduct, was "wholly conclusory and insufficient to establish a hostile work environment claim" (internal citation and

quotation marks omitted)); *cf. Alfano*, 294 F.3d at 380 (reversing district court's judgment on the pleadings on hostile work environment claim where plaintiff alleged incidents that were "too few, too separate in time, and too mild … to create an abusive working environment"). Plaintiff's vague pleadings are insufficient to allege a pervasively hostile work environment "permeated with discriminatory intimidation, ridicule, and insult." *See Moore*, 2016 WL 825001, at *13 (quoting *Littlejohn*, 795 F.3d at 320-21).

*Second*, Plaintiff alleges that after she filed her Second EEOC Complaint, both her supervisors and certain members of Defendant's Human Resources Department began to "harass" Plaintiff about her retirement; she received unsolicited offers from Human Resources staff to assist her with the retirement process, and her manager repeatedly asked her about her anticipated retirement timing. (TAC ¶ 15). These allegations suffer from flaws similar to those just discussed with respect to Plaintiff's earlier retaliation claims. Plaintiff again fails to allege any specific instances of this alleged harassment, let alone their frequency. This is fatal for the purpose of her hostile work environment claim, where "the precise frequency of such comments is of great importance." *See Almontaser* v. *N.Y.C. Dep't of Educ.*, No. 13 Civ. 5621 (ILG) (VMS), 2014 WL 3110019, at *8 (E.D.N.Y. July 8, 2014). In determining when comments are sufficiently frequent for these purposes, courts have found that "[d]isparaging remarks made daily clearly constitute an actionable hostile work environment" while "comments made only weekly may not." *Id.* (collecting cases); *see also Wu* v. *Metro-N. Commuter R.R. Commuter R.R. Co.*, No. 14 Civ. 7015 (LTS) (FM), 2016 WL 5793971, at *17 (S.D.N.Y. Aug. 4, 2016) (determining that "stray remarks"

regarding retirement "do not rise to the level of demonstrating that a hostile work environment existed"). Here, Plaintiff's allegations with respect to retaliation for filing her Second EEOC Complaint — *i.e.*, that she was asked about her retirement date and received offers to assist with the retirement process — are closer to "stray remarks" than to daily disparaging comments. *See Boonmalert*, 721 F. App'x at 34 (holding that "[d]iscussions of retirement and a one-time preparation of retirement paper d[i]d not suffice" to survive a motion to dismiss); *Almontaser*, 2014 WL 3110019, at *1, 8 (finding that plaintiff's allegation that defendants made "frequent" remarks that he was "too old" and asked when he was going to retire was "simply too vague" to support a hostile work environment claim); *Mazur* v. *N.Y.C. Dep't of Educ.*, 53 F. Supp. 3d 618, 635 (S.D.N.Y. 2014) ("[C]omments or questions about retirement, without more, do not create a hostile work environment."), *aff'd*, 621 F. App'x 88 (2d Cir. 2015) (summary order).

Given the lack of specificity in Plaintiff's allegations, the Court cannot find that her work environment was objectively hostile. The Court instead must find that Plaintiff has not alleged sufficiently severe and pervasive conduct to sustain a hostile work environment claim under the ADEA, and as a result, her claim must fail.

### c. The Court Dismisses Plaintiff's ADEA Retaliation Claim

Plaintiff also brings a retaliation claim under the ADEA. The allegations underpinning this claim have been previously discussed in connection with Plaintiff's hostile work environment claim — though, as explained above, the Court may only consider post-April 2018 conduct when

determining the plausibility of Plaintiff's retaliation claim.  In brief, Plaintiff alleges that Defendant retaliated against her following her First EEOC Complaint in 2015 and her subsequent internal complaints, and that she experienced further retaliation in response to her Second EEOC Complaint. (TAC ¶¶ 10, 13, 15).

To state a claim for retaliation under the ADEA, a plaintiff must show: "[i] participation in a protected activity known to the defendant; [ii] an employment action disadvantaging the plaintiff; and [iii] a causal connection between the protected activity and the adverse employment action." *Boonmalert*, 721 F. App'x at 33 (quoting *Feingold* v. *New York*, 366 F.3d 138, 156 (2d Cir. 2004) (internal quotation marks omitted)).  "The Supreme Court and Second Circuit have defined 'adverse action' for the purposes of a retaliation claim broadly."  *Cerni* v. *J.P. Morgan Sec. LLC*, 208 F. Supp. 3d 533, 539 (S.D.N.Y. 2016).  A plaintiff need only "show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* at 539 (quoting *Kessler*, 461 F.3d at 207 (internal quotation marks omitted)); *accord Davis-Garett*, 921 F.3d at 43-44.  Proof of causation, in turn, "may be shown either '[i] indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or [ii] directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'"  *Meyer* v. *Shulkin*, 722 F. App'x 26, 28 (2d Cir.

31

2018) (summary order) (quoting *Hicks* v. *Baines*, 593 F.3d 159, 170 (2d Cir. 2010) (internal quotation marks omitted)).

Defendant does not dispute that Plaintiff engaged in protected activity. (*See* Def. Br. 18-21). It instead challenges other elements of her retaliation claim, arguing that: (i) Plaintiff has not established the necessary causal connection between any protected activity and the ensuing retaliation, and (ii) she has not alleged that Defendant had knowledge of her Second EEOC Complaint. (Def. Br. 19-20). Plaintiff does not directly respond to these arguments, but notes that her supervisors began to treat her differently "within several months" of her First EEOC Complaint and her internal EEO Complaint, including by "expressing annoyance" at her complaints, isolating her, "mostly ignoring her[,] and depriving her of meaningful assignments which would allow her to continue to advance professionally." (Pl. Opp. 4). She alleges that she felt "deeply uncomfortable" by what she describes as her "pariah status" in the office." (*Id.*).

With particular respect to Plaintiff's First EEOC Complaint, EEO Complaint, and other internal complaints, the Court agrees with Defendant that Plaintiff has failed to establish the requisite causal connection for a claim of retaliation. Plaintiff has not alleged any direct evidence of retaliatory animus, but has instead asserted that after she began making complaints about her age discrimination concerns, her managers treated her differently than they had previously. (TAC ¶¶ 10, 13, 15). While indirect proof of causation may be established by the temporal proximity between the protected activity and the adverse employment action, *see Mohan* v. *City of New York*, No. 17 Civ. 3820 (KPF), 2018 WL 3711821, at *9 (S.D.N.Y. Aug.

3, 2018), Plaintiff does not provide sufficient detail to establish such temporal proximity. In her opposition brief, Plaintiff alleges that she began experiencing differential treatment "within several months after her first complaint with the EEOC and filed internal complaints." (Pl. Opp. 4). Given that Plaintiff filed her First EEOC Complaint in 2015, and her EEO Complaint in March 2016, this allegation does not provide the Court with sufficient clarity on the timeline of Defendant's retaliatory conduct.

If anything, the timeline is further muddied by Plaintiff's allegations that she experienced certain retaliatory conduct following conversations with senior management, as Plaintiff does not allege either the dates of those conversations or the retaliatory actions that followed. *See Anand* v. *N.Y. State Dep't of Tax'n & Fin.*, No. 10 Civ. 5142 (SJF) (WDW) 2012 WL 2357720, at *6 (E.D.N.Y. June 18, 2012) (finding that where plaintiff had provided neither the dates of his protected activities nor adverse actions, the district court could not determine "whether there was a genuine temporal proximity between them").[13] And the Court cannot ignore Plaintiff's failure to allege sufficient temporal proximity where "there is a dearth of supporting facts to bolster [her] claims of retaliatory motives." *Siclari* v. *N.Y.C. Dep't of Educ.*, No. 19 Civ. 7611 (AJN), 2020 WL 7028870, at *9 (S.D.N.Y. Nov. 30, 2020)

---

[13]    Moreover, even were the Court able to accept Plaintiff's allegation that Defendant's retaliatory conduct occurred within "several months" of her various complaints, "district courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *Murray* v. *Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007); *see also Ragin* v. *E. Ramapo Cent. Sch. Dist.*, No. 05 Civ. 6496 (PGG), 2010 WL 1326779, at *24 (S.D.N.Y. Mar. 31, 2010) ("[M]any courts in this circuit have held that periods of two months or more defeat an inference of causation."); *Hussein* v. *Hotel Emps. & Rest. Union, Local 6*, No. 98 Civ. 9017 (SAS), 2002 WL 10441, at *2 (S.D.N.Y. Jan. 3, 2002) (finding that where purported protected activities occurred many months or years prior to the adverse action, there was no retaliatory nexus).

(observing that in cases where courts have found that larger gaps between the protected activity and the first alleged retaliatory action were not "inherently prohibitively remote," there were other "other supporting factual allegations" that influenced the causation analysis).  The Court thus finds that Plaintiff has failed to establish the necessary causal connection to sustain a retaliation claim as to Defendant's conduct following her initial complaints.

Plaintiff's allegation of retaliatory conduct following her Second EEOC Complaint fails for a different reason.  As to this claim, the timeline is somewhat clearer: at some point following Plaintiff's February 19, 2019 submission of her Second EEOC Complaint, Defendant allegedly began to "harass" her with inquiries about the timing of her retirement, which harassment lasted until her May 31, 2019 resignation.  (TAC ¶¶ 14-16).  However, in its motion to dismiss, Defendant argues that Plaintiff has failed to allege that it had any knowledge of her Second EEOC Complaint.  (Def. Br. 20-21).  While Plaintiff alleges that, with respect to her First EEOC Complaint submitted in 2015, she was informed that Defendant had been sent a copy of that complaint (TAC ¶ 8), she does not make any similar allegation that would permit the Court to infer Defendant's knowledge of her Second EEOC Complaint (*see id.* at ¶ 16).  Such an allegation is necessary to establish a plausible ADEA retaliation claim.  *See Barrer-Cohen* v. *Greenburgh Cent. Sch. Dist.*, No. 18 Civ. 1847 (NSR), 2019 WL 3456679, at *6 (S.D.N.Y. July 30, 2019) ("[C]ourts have held employers cannot retaliate for conduct of which they are unaware.").

34

The Court observes that Plaintiff's right to sue letter, appended to her SAC, indicates that a copy of the letter may have been sent to Defendant at or about the time of its issuance.  (*See* SAC 11-12).  However, without more, the right to sue letter does not establish knowledge of Plaintiff's Second EEOC Complaint by those involved in perpetuating the allegedly retaliatory conduct.  *See McManamon* v. *Shinseki*, No. 11 Civ. 7610 (PAE), 2013 WL 3466863, at *10 (S.D.N.Y. July 10, 2013) ("A complaint that makes only general statements that the defendant retaliated against the plaintiff but does not supply factual detail describing … which employees were aware of any protected activity or were actually involved in retaliatory conduct [] is insufficient to withstand a motion to dismiss."); *Saidin* v. *N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 688 (S.D.N.Y. 2007) (finding plaintiff's pleadings insufficient where he failed to allege which official had knowledge of his EEOC charge and who "actually engaged in the claimed retaliation").  And even had Plaintiff sufficiently alleged Defendant's knowledge of her Second EEOC Complaint, her retaliation claim would nonetheless fail because the alleged retaliatory conduct — unsolicited inquiries about her retirement — does not constitute an adverse action.  *See Nakis* v. *Potter*, 422 F. Supp. 2d 398, 419-21 (S.D.N.Y. 2006); *Lorans* v. *Crew*, No. 98 Civ. 3419 (TPG), 2000 WL 1196745, at *4 (S.D.N.Y. Aug. 23, 2000).  It is thus insufficient to sustain a retaliation claim under the ADEA.

### d.  The Court Dismisses Plaintiff's Constructive Discharge Claim

Though Plaintiff does not expressly allege a constructive discharge claim in her TAC, as discussed *supra*, she puts forth allegations that

"encompass" a theory of constructive discharge.  *See Fitzgerald* v.

*Henderson*, 251 F.3d 345, 367 (2d Cir. 2001).  Specifically, she alleges that

following the filing of her Second EEOC Complaint, both her supervisors and

certain Human Resources staff began to "harass" her about her retirement,

and that this harassment made her physically and emotionally ill to the

point where she resigned from her position with Defendant.  (TAC ¶¶ 15-16).

Further, Plaintiff clarifies in her opposition brief that she intends to put

forth a constructive discharge claim, alleging that Defendant created

"demoralizing conditions" by isolating her and "improperly frustrating her

path to professional development."  (Pl. Opp. 2).  The Court will accordingly

consider whether Plaintiff has sufficiently pleaded such a claim under the

ADEA.

To establish a constructive discharge under the ADEA, a plaintiff

must show that the employer "deliberately made [her] working conditions so

intolerable that [she] was forced into an involuntary resignation."  *Stetson* v.

*NYNex Serv. Co.*, 995 F.2d 355, 360 (2d Cir. 1993) (quoting *Pena* v.

*Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983) (alterations and

internal quotation marks omitted)).  Working conditions are intolerable

when, "viewed as a whole, they are 'so difficult or unpleasant that a

reasonable person in the employee's shoes would have felt compelled to

resign.'"  *Terry* v. *Ashcroft*, 336 F.3d 128, 152 (2d Cir. 2003) (quoting

*Chertkova* v. *Conn. Gen. Life Ins. Co.,* 92 F.3d 81, 89 (2d Cir. 1996)).  This is

a "demanding standard," as "[c]onstructive discharge cases 'present a worse

case harassment scenario, harassment ratcheted up to the breaking point.'"

*Spires* v. *MetLife Grp., Inc.*, No. 18 Civ. 4464 (RA), 2019 WL 4464393, at *9

(S.D.N.Y. Sept. 18, 2019) (alteration in *Spires*) (quoting *Copantitla* v. *Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 301 (S.D.N.Y. 2011)).

Defendant argues that Plaintiff's failure to state a hostile work environment claim necessarily means that she has failed to allege a constructive discharge claim. (Def. Reply 11, 13). The Court agrees that Plaintiff's allegations of retaliatory conduct by Defendant are insufficient to sustain a constructive discharge claim under either theory.

The Court understands Plaintiff's allegations in her opposition brief that Defendant created "demoralizing conditions" by "improperly frustrating her path to professional development" (Pl. Opp. 2), to refer to the allegations in the TAC that her managers began isolating her (TAC ¶ 13), depriving her of meaningful work assignments (*id.*), and subjecting her to unsolicited inquiries about her retirement (*id.* at ¶ 15).[14] Courts have found that similar allegations of "dissatisfaction with job assignments" are "simply insufficient to establish the sort of intolerable working conditions necessary to a constructive discharge claim[]." *Pfizenmayer* v. *Hicksville Pub. Schs.*, No. 15 Civ. 6987 (SJF) (SIL), 2017 WL 5468319, at *9 (E.D.N.Y. Jan. 24, 2017) (quoting *Gerardi* v. *Huntington Union Free Sch. Dist.*, 124 F. Supp. 3d 206, 224 (E.D.N.Y. 2015) (internal quotation marks omitted)) (collecting cases); *see also Gerardi*, 124 F. Supp. 3d at 224 ("[E]xclusion from meetings, disagreement over work place duties, and squabbles with colleagues —

---

[14] To the extent Plaintiff is referring to Defendant's alleged failure to consider her for certain positions, "denial of promotion by itself, even for discriminatory reasons, 'does not constitute an intolerable work atmosphere amounting to a constructive discharge.'" *Spires* v. *MetLife Grp., Inc.*, No. 18 Civ. 4464 (RA), 2019 WL 4464393, at *9 (S.D.N.Y. Sept. 18, 2019) (quoting *Loucar* v. *Boston Mkt. Corp.*, 294 F. Supp. 2d 472, 482 (S.D.N.Y. 2003)) (collecting cases).

'largely amount to the sort of routine disagreements with supervisors or mild criticisms that are simply insufficient to establish ... intolerable working conditions[.]'" (quoting *Miller* v. *Praxair, Inc.*, 408 F. App'x 408, 410 (2d Cir 2010) (summary order)).  Plaintiff has not distinguished her allegations from the types of routine disagreements that fail to establish intolerable working conditions.

And while Plaintiff alleges that she became "physically and emotionally ill" from her treatment by Defendant, such that she ultimately resigned (TAC ¶ 16), she has not established that her ill health resulted from "deliberately created working conditions that were 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign[.]'"  *Spence* v. *Md. Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir. 1993) (quoting *Pena*, 702 F.2d at 325); *see id.* ("[T]he fact that an employee develops stress-related ill health from the demands of his voluntarily undertaken position or from criticisms of his performance, and as a result determines that health considerations mandate his resignation, does not normally amount to a constructive discharge by the employer.").  Plaintiff's pleadings are devoid of the specific allegations necessary to find that her alleged ill health was caused by deliberately created working conditions, let alone allegations that suggest that Defendant had made Plaintiff's employment intolerable.  *Cf. Rosen* v. *N.Y.C. Dep't of Educ.*, No. 18 Civ. 6670 (AT), 2019 WL 4039958, at *7 (S.D.N.Y. Aug. 27, 2019) (finding that plaintiff had plausibly stated a claim for constructive discharge where she alleged that she was threatened with termination, required to perform "burdensome" tasks, escorted from her office by security guards on multiple

occasions, subjected to comments suggesting that she should retire, and where she further alleged a pattern of behavior toward older teachers). Rather, Plaintiff's vague allegations of dissatisfaction with assignments and unsolicited inquiries about her retirement "fall far short of what an objectively reasonable person would consider discriminatory or pervasive enough to force her to resign." *Gerardi*, 124 F. Supp. 3d at 224 (observing that plaintiff had been neither subjected to an "onslaught of unfounded criticism coupled with the threat of immediate termination," nor "a variety of misogynist comments" (citations and internal quotation marks omitted)). For these reasons, the Court finds that Plaintiff's ADEA constructive discharge claim fails as a matter of law.

### 3. The Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's NYSHRL and NYCHRL Claims

Federal district courts have supplemental jurisdiction over state-law claims "that are so related to" federal claims "that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Such jurisdiction, however, is "discretionary," *City of Chicago* v. *Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997), and a district court "may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c). Having dismissed Plaintiff's ADEA claims in their entirety, the Court will decline to exercise supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims. *See Shi* v. *N.Y. Dep't of State*, 393 F. Supp. 3d 329, 343 (S.D.N.Y. 2019) ("In the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over

39

the remaining state-law claims." (internal alterations omitted) (citing *Kolari* v. *N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006))); *see also Modesto* v. *Figueroa*, No. 15 Civ. 495 (RA), 2016 WL 299033, at *3 (S.D.N.Y. Jan. 25, 2016) (declining supplemental jurisdiction over NYCHRL claim after dismissing federal claims); *Morant* v. *Physicians Affiliate Grp. of N.Y., P.C.*, No. 14 Civ. 67 (TPG), 2014 WL 3964153, at *2 (S.D.N.Y. Aug. 13, 2014) (declining supplemental jurisdiction over NYSHRL and NYCHRL claims after dismissing federal claim).  Accordingly, the Court dismisses Plaintiff's NYSHRL and NYCHRL claims without prejudice to their potential refiling in state court.

### 4.     The Court Denies Plaintiff Leave to Amend

"Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court 'should freely give leave [to amend] when justice so requires.'"  *Gorman* v. *Covidien Sales, LLC*, No. 13 Civ. 6486 (KPF), 2014 WL 7404071, at *2 (S.D.N.Y. Dec. 31, 2014) (quoting Fed. R. Civ. P. 15(a)(2)).  Consistent with this liberal amendment policy, "'[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.'"  *Id.* (alteration in *Gorman*) (quoting *Block* v. *First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).  That being said, "it remains 'proper to deny leave to replead where … amendment would be futile.'"  *Id.* (quoting *Hunt* v. *All. N. Am. Gov't Income Tr., Inc.*, 159 F.3d 723, 728 (2d Cir. 1998)).[15]

---

[15]     Similarly, the Court recognizes that while a *pro se* complaint "should not be dismissed without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Shomo* v. *City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (alterations and citation omitted),

In her opposition brief, Plaintiff requests that the Court grant her leave to amend to address any deficiencies identified by the Court in its consideration of Defendant's motion. (Pl. Opp. 5). Defendant opposes such a request. (Def. Reply 14-15). Plaintiff has now thrice amended her complaint, most recently with the benefit of both a pre-motion letter from Defendant and a conference with the Court. (*See* Dkt. #22 (pre-motion letter), Dkt. #28 (transcript)). *Cf. Nat'l Credit Union Admin. Bd.* v. *U.S. Bank Nat'l Ass'n,* 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." (alteration, footnote, and internal quotation marks omitted)); *Binn* v. *Bernstein*, No. 19 Civ. 6122 (GHW) (SLC), 2020 WL 4550312, at *34 (S.D.N.Y. July 13, 2020) ("To grant Plaintiffs leave to amend would be allowing them a 'third bite at the apple,' which courts in this district routinely deny." (collecting cases)), *report and recommendation adopted*, No. 19 Civ. 6122 (GHW) (SLC), 2020 WL 4547167 (S.D.N.Y. Aug. 6, 2020). Plaintiff has failed to cure the defects of her prior pleadings. As such, Plaintiff's request to file a fourth amended complaint is DENIED.

---

leave to replead need not be granted where — as here — it would be "futile," *Cuoco* v. *Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## CONCLUSION

For the reasons set forth above, Plaintiff's ADEA claims are dismissed with prejudice.  Plaintiff's remaining NYSHRL and NYCHRL are dismissed without prejudice.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.  The Clerk of Court is further directed to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

Dated:      March 15, 2021
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

42